FEOFFEES OF THE GRAMMAR SCHOOL IN THE TOWN OF IPSWICH *vs.* ELIAS ANDREWS.

The grant made by the town of Ipswich, in 1650, in trust for the use of a school in that town, conveyed a fee, although it contained no words of limitation.

The feoffees of the grammar school in Ipswich are owners in fee of the reversion expectant on the expiration of the long lease of the school lands, to John Cogswell and his assigns, made in 1650 ; and their title thereto was confirmed ᵇᵞ ᵗʰᵉ statute for

regulating said school, which was passed in 1765, and was made perpetual by *St* 1786, *c. 54.*

The present tenants of the lands belonging to said feoffees are not entitled, by virtue of the provision in said lease to John Cogswell, to deduct their town taxes from the rent reserved in that lease.

DEBT for rent of part of the School Farm, so called, in the town of Essex, from March 1838 to March 1839. The first count was on the lease hereinafter mentioned, and the second was for use and occupation

The case was submitted to the court upon the statement of facts which follows: On the 14th of November 1650, the town of Ipswich, " at a general town meeting, granted to Mr. Robert Payne and Mr. William Payne, and such others as the town shall appoint, for the use of the school, all that neck of land beyond Chebacco River, and the rest of the ground (up to Gloucester line) adjoining to it. Major Denison and Mr. Bartholomew chosen by the town and added to the two Mr Paynes."

The lease mentioned in the plaintiffs' first count was in these terms : " This indenture made the 16th day of January in the year of our Lord 1650, [1651,] between Daniell Denison, Robert Payne, William Payne and William Bartholomew, all of Ipswich, in the county of Essex, in New England, on the one part, and John Cogswell jr., of Ispwich aforesaid, in the county aforesaid, of the other part, witnesseth, that the said Daniell Denison, Robert Payne, William Payne and William Bartholomew have demised, granted and to farm letten, all that parcel of land commonly called the Neck, beyond Chebacco River, bounded," [here the boundaries were given ;] " which said land, situate and being in Ipswich aforesaid, was granted to Daniell Denison, Robert Payne, William Payne and William Bartholomew, by the town of Ipswich, for the use of a free school in Ipswich forever, to the said John Cogswell, jr. his heirs, executors and assigns, for and during the space of one thousand years next ensuing the date hereof to be fully com plete and ended ; yielding and paying therefor yearly, during the said term, the yearly sum of fourteen pounds, in manner following; that is to say, four pounds in butter and cheese, five

pounds in beef and pork, and five pounds in corn, at the current price they shall bear at the days of payment, which shall be yearly, the one half at or before the fifteenth day of November, and the other half on the fifteenth day of March after. All which payment shall be made to the said Daniell Denison, Robert Payne, William Payne and William Bartholomew, their heirs or assigns, at the days aforesaid, at the meeting-house in Ipswich , provided it shall be always lawful for the said John Cogswell to discount so much of the yearly rent as shall be at any time (if any be) charged upon the said lands, for town's rates, but not for country rates or ministry maintenance ; and if it shall happen the said yearly rent, or any part thereof, to be behind and unpaid, after any of the days of payment aforesaid, by the space of one month, then it shall be lawful for the said Daniell Denison, Robert Payne, William Payne and William Bartholomew, or any of them, or their heirs or assigns, to enter and distrain, and the distress, therefor taken, lawfully to bear, lead, drive and carry away, and to retain the same until the yearly rent and arrearages be lawfully paid and satisfied ; and if sufficient distress be not there to be found, then, at all times after, it shall be lawful for the said Daniell Denison, Robert Payne, William Payne and William Bartholomew, or any of them,˙ their heirs or assigns, upon the said lands and appurtenances to reënter, and the same to have again and possess, and the said John Cogswell, his heirs, executors or assigns, to expel and put out, any thing in this indenture contained to the contrary notwithstanding. In witness whereof, the parties aforesaid have to this indenture interchangeably set their hands and seals the day and year above written." (Signed and sealed by the parties.)

. On the 19th of December 1651, the aforesaid lessors, Daniell Denison, Robert Payne, William Payne and William Bartholomew, gave to said John Cogswell an additional or explanatory deed, wherein they declared that it was their intent, in the aforesaid. indenture, that said Cogswell, his heirs or assigns, should have and enjoy the said demised prer˙ses during the whole term, and improve the timber thereupon growing and being, at his own liberty and pleasure. And they also therein

declared that said Cogswell should " have and hold the premises, to him, his heirs, executors and assigns, during the whole term, with all and singular the appurtenances, without any impeachment of or for waste, or to be in any way liable to be called to account for any strip or waste in respect of house or houses, or timber now or hereafter to be in or upon the premises, or any part thereof."

In the year 1683, Robert Payne made the deed of confirmation, which is copied in the margin.*

---

* To all Christian People, to whom this present writing shall come, Robert Payne, sen. of Ipswich, in New England, sendeth greeting. Whereas, after severall overtures and endeavours, among the inhabitants of said Ipswich, for setleing a grammar school in that place, it was proffered by the said Robert that he would erect an edefice for such a purpose; provided it might be putt into the hands of certain discreet and faithfull persons of the said towne, and their successors which himself should nominate, to be ordered and managed by them as feoffees in trust for that end, and their successors forever; provided also, that the towne, or any particular inhabitants of the towne, would devote and set apart and give any land or other annuity for the yearly maintenance of such a one as should be fit to keep a grammar school: And whereas, the towne of Ipswich, att a publick meeting of the inhabitants, November 14th 1650, did give all the neck of land beyound Chebaccu River, and the rest of the ground up to Gloucester line adjoining to it, to the said Robert Payne, and William Payne, to whom, by the desire and consent of the said towne, att the same time, were added Major Dennison and William Bartholomew, for the use of such a school : And that the forementioned Major Dennison, Robert Payne, William Payne and William Bartholomew, did for themselves, their heirs and assigns, immediately after make a lease of all the said neck of land to John Cogswell jr. for *one thousand years*, he, his heirs or assigns, paying a yearly rent for the same, for fourteen pound per annum, for the use of the school, with the power and liberty of a reentry reserved to themselves, their heirs and assigns, in case of non-payment of said rent ; as may more largely appear by an indenture betwixt the said John Cogswell, on the one partie, and Major Dennison, Robert Payne, William Payne and William Bartholomew, on the other partie, bearing date January 16th 1650 : And that also the inhabitants of said Ipswich, att a publick meeting, January 26th 1650, did add five more, (viz.) Mr. Symonds, Mr. Nathaniel Rogers, Mr. John Norton, Mr. William Hubbard and Deacon John Whipple, to the forementioned Major Dennison, Robert Payne, William Payne and William Bartholomew, according to the desire of the said Robert Payne, all of whom they constituted and ordained as a committee, to have full power to regulate all matters of and concerning the said school's maintenance and schollars, as they shall see meet from time to time ; and that the said Robert did, in the year following, (viz.) 1652, purchase an house with two acres of ground belonging to it, more or less, of Richard Coy, as attorney

In the year 1710, an instrument was executed by tenants of said school lands, by which they expressly agreed to pay town taxes : [See this instrument at large, in the opinion of the court, *post.* p. 595.]

The defendant purchased a part of the premises described in the aforesaid indenture of lease, subject to the rent therein reserved, but without any express words respecting the deduction of taxes ; and he holds a part of said premises by descent.

to Samuel Heifer, the proper and rightful owner thereof, for the use of the school master, and likewise did, in the succeeding year, 1653, att his own proper cost and charges, build an edefice for a grammar school, which was erected on part of the land so purchased: And whereas, likewise, some of the first committee being deceased, and some living remote, the inhabitants of said towne, at a meeting, February 18th 1661, did nominate the reverend Mr. Cabott, Mr. William Hubbard, Mr. John Rogers, leaveing the said Robert Payne liberty to nominate two more, who hath since nominated Captain John Appleton and Mr. John Payne, eldest son of the said Robert, to be added to the former committee, which persons the former committee did approve and accept, as being ready to join with them according to the trust first committed to them, and that as any other of the said committee have deceased, they have continually made up the first number by some meet person or persons chosen by themselves, to be the succeeding members thereof: Whereas, lastly, the gift of the said house and land, with the edefice erected for the school upon part thereof, was never yet recorded in any publick register:

Now know ye, that the said Robert Payne, for several good causes and considerations him thereunto moveing, especially for the increase of learning in the next generation, hath seen cause, by this publick instrument, to signify and declare, that as he did, in the year 1652 and 1653, make the said purchase of a house and parcel of land, and erect an edefice att his own cost and charges, for that use of a grammar school in said Ipswich, so he doth hereby ratify and confirm the same for the aforesaid intent and purpose forever. Hereby also making over, enfeoffing his whole right and interest in all the premises, (viz.) in the neck of land beyond Chebacco River, given him, with three others, (which are all besides himself deceased,) for the use of the school, and in the said house and land purchased and the edefice erected thereon, to the rest of the committee lately chosen or yet remaining, to them, and their heirs and successors, or assigns, forever, which successors shall be chosen by themselves, as any shall be taken away by death, or any other way removed, so as to be incapable to act in and about the premises ; hereby also debarring any of his other natural heirs hereafter from making any claim, challenge or demand, to any of the premises aforesaid, or any part thereof whatsoever.

In witness whereof, the said Robert hath hereunto set his hand and seal, this fourth day of October, in the year of our Lord sixteen hundred and eighty three.                                        Robert Payne. (Seal.)

In February 1819, the town of Essex, within which said leased premises are situate, was set off from Ipswich, and in corporated by *St.* 1818, *c.* 85. (5 Special Laws, 294.) By this statute, " the grammar school house, with the lands, hereditaments, rents and profits heretofore received, and belonging to the said grammar school," were reserved to the town of Ipswich.

The defendant has paid rent to the plaintiffs up to the yeat 1838, and for many years past has been their agent for collecting rents from the other tenants of said School Farm, and paying over the same, which have been paid up to March 1838 ; said tenants having previously paid their rents directly to the plaintiffs.

The defendant's town tax in Essex, for the municipal year 1838, was $8·02 ; his county tax $2·30 ; and his proportion of the rent reserved by said lease was $6·67, for the same time ; but he has never paid any town tax in Ipswich, since the incorporation of the town of Essex ; nor has he, since said in corporation, been taxed by the town of Ipswich for the leased lands held by him.

The votes and records of the town of Ipswich, and of the plaintiffs, so far as they are competent evidence, are made part of this case; also the statutes empowering the plaintiffs to act as trustees of the grammar school in Ipswich, viz. the stat ute passed in 1765, and the previous statute therein mentioned ; (3 Special Laws, Appx. 1, 2 ;) and *St.* 1786, *c.* 54. (1 Special Laws, 145.)

The parties agreed that judgment should be rendered for the plaintiffs, if they were entitled to recover ; otherwise, that the plaintiffs should become nonsuit.

This case was argued and decided at a former term. Various votes, &c. were referred to, which it is unnecessary to set forth at large, as they sufficiently appear in the arguments, and in the opinion of the court.

*N. J. Lord & O. P. Lord,* for the plaintiffs. The authority of the original lessors was derived from the vote of the town of Ipswich, passed November 14th 1650. This vote might, per-

haps, have passed a fee, if it had been so intended. But the intention, as is to be inferred from the subsequent action of the town, was merely to grant the charge and oversight of the land to Robert Payne and others. See the statutes referred to in the statement of facts.

Immediately upon the death of the last of the feoffees, the town claimed the land, and the right to lease it, and to take the rents, till the year 1765. This claim of the town, and the acquiescence of the lessees, operated as a surrender of the lease ; and the lessees, having paid rent to the town yearly, became tenants from year to year. *Watt* v. *Maydewell*, Hut. 103. *Ive's case*, 5 Co. 11 *b*.

From these and other proceedings, it appears that the original lessors had no authority to demise for a thousand years, and that their lease was therefore void. They had, at most, only a life estate.

The lessees have not, for a long time, paid rent in specific articles, according to the original lease. They hold under different lessors, on a different rent, and under different liabilities for rent.

The legislature, in 1765, on the request of all parties, and in compromise of the dispute, vested the estate in the lands in the town and feoffees, by incorporating, as feoffees, the three oldest selectmen, with the power of perpetuating the corporation by election. This statute did not establish the lease, but fixed the title to the estate ; and the lessees still remain tenants from year to year, and as such have always paid rent. The plaintiffs are therefore entitled to recover on the count for use and occupation.

If, however, the grant by the town was of the fee, the lease is still subsisting, and the right to deduct taxes was a personal privilege to John Cogswell, and not to his heirs and assigns. In other parts of the lease, where the covenants are meant to extend to heirs and assigns, they are carefully expressed. Besides ; the taxes to be deducted are only taxes assessed by the town of Ipswich.

Again ; John Cogswell and others, (doubtless all the tenants,)

in 1710, released their right to deduct taxes.    [See this release, *post.* p. 595.]

*Huntington & Perkins,* for the defendant.    The deed of confirmation, given by Robert Payne, in 1651, and the whole course of subsequent proceedings show that the grant of the town .was intended and treated as a grant in fee.    And the statute of 1765 established the title and confirmed the lease

The defendant is tenant under the lease, with the right to discount town taxes.    The purpose of the lease was to bring the land to public use ; and it was therefore immaterial whether the town received the rent, as such, or in the form of taxes and there was no reason why the right to deduct taxes should be confined to John Cogswell.    The provision was a mode of paying rent, and runs with the land.    *Spencer's case,* 5 Co. 16. *Bally* v. *Wells,* 3 Wils. 29.    *Tatem* v. *Chaplin,* 2 H. B. 133. *Webb* v. *Russell,* 3 T. R. 402.    *Morse* v. *Aldrich,* 19 Pick. 449. It was at the option of Cogswell to discount his taxes, or not ; and therefore, though rent has been paid without discounting taxes, yet the tenants may insist on such discount, when they please.

WILDE, J.    On the facts agreed, several questions of law have been submitted to the determination of the court, in the discussion of which other facts have been assumed by counsel, which are not stated in the statement of facts, and which cannot be ascertained by the records of the town of Ipswich, and the deeds and documents which are referred to and made a part of the case.    Whether, if these facts could be ascertained, they would materially affect the rights of the parties, is very doubtful.    But, however this may be, we understand the parties do not wish the case to be further delayed for the purpose of ascertaining these doubtful facts. It must, therefore, now be decided on the facts agreed.

The first question to be considered is, whether the plaintiffs have made out a good title to the land, for the occupation of which, by the defendant, rent is claimed.    And this depends on the construction to be given to the grant of the town of Ipswich to Robert Payne and others, in the year 1650, and the

statute of 1765 in relation to that grant. The plaintiffs' coun-sel contend that, as the grant contained no words of limitation a life estate only passed to the grantees. And if this had been a more recent conveyance, such would have been its construc-tion But in construing conveyances made early after the set-tlement of the country, when conveyancing was little understood, the intention of the parties is to govern, without regarding the rigid rules of construction which would be applicable to recent conveyances, and which might defeat the intention of the par-ties, however clearly that might be made to appear. So it was decided in *Adams* v. *Frothingham*, 3 Mass. 352. And the same rule of construction was adopted in *Springfield* v. *Miller*, 12 Mass. 415, and has been recognized in other cases. This rule of construing ancient conveyances was adopted to uphold the titles derived therefrom, which otherwise might be subverted in very many instances, and would be attended with manifest injustice, so extensively as to require, for the public good, the adoption of a rule adapted to the transactions which took place soon after the first settlement of the country. Conforming to this rule of construction, we can have no doubt that, by the grant in question, an estate in fee passed to the grantees. That a fee was intended to be conveyed, will not admit of a doubt. The grantees, immediately after the grant, leased the premises for one thousand years, and, undoubtedly, without objection of the town. In 1683, Robert Payne, having alone survived the other grantees, undertook to perpetuate the trust, and did con-vey in fee the whole premises, which he held in trust, to certain persons, being a committee for the management of the school, three of whom were nominated and chosen by the town, and two by the said Robert Payne. In this conveyance, provision is made for the choice of successors, whenever any of the trus-tees should die, or in any other way be removed, so as to be incapable to act in and about the premises. These latter trus-tees, or their successors, continued to act in the performance of their trust, without objection from the town or any inhabitant, so far as appears by the records of the town, until 1720, when some difficulties arose, and the town, for the first time, laid claim

to the land, as having reverted to them after the death of the original feoffees ; and a suit was instituted, by the town, against one of the tenants under the lease to Cogswell, to recover possession of a part of the premises. In the court of common pleas, the tenant recovered judgment, and the town appealed to the superior court, and, having afterwards failed to enter their appeal, they petitioned the general court to enter their appeal ; but how the case terminated does not appear.

Against these proceedings of the town, the reverend John Rogers and the reverend Jabez Fitch presented a memorial which was allowed to be entered in the records of the town. In this memorial, the town are requested to reconsider a former vote, and to stop the suit, " lest," as it is said, " by going on in the town's name, it should bring a general odium and guilt of public injustice, and consequently that wrath which is revealed against all injustice and unrighteousness of men, more particularly the judgments threatened and executed on the violating and breaking in upon any ancient contracts and covenants with any people or persons, a famous instance whereof is recorded, for our warning, in 2 Samuel, xxi. 1." " That the gentlemen, to whom the farm was granted, had the consent of the town to lease the premises," the memorialists say, " is evident. 1st, in that the said farm was granted for the use of a school." " Now, it was usual," they say, " in ancient grants of the town, to say no more than ' we grant such a parcel of land to such a man,' designing thereby, not a temporary grant, but that was granted to them forever. 2d. Those gentlemen that made the lease (who were men of undoubted veracity) said that the grant was for the use of the school forever. 3d. They have been assured, by living witnesses, that the town were pleased with the doings of the feoffees."

Taking into consideration these proceedings of the town, and of the feoffees and their successors, we think there can be no doubt that the town intended to convey the land granted in fee simple, and that their grant is to be construed accordingly.

But, if there were any doubt of the construction of the grant, that doubt is removed, and the plaintiffs' title is confirmed, by

50 *

the statute of 1765. That act passed on the application of all parties interested. It is therefore perfectly clear that the plaintiffs have a good title to the reversion in the premises, after the expiration of the lease for one thousand years, and in the mean time they are entitled to the rents reserved, unless that lease has been surrendered ; and if it has, then they are entitled to a present estate in fee, and may recover on the count for use and occupation.

The plaintiffs' counsel contend that the lease has been surrendered, as the defendant, or those under whom he claims, have taken a new lease or leases of the same land for a shorter time, which would operate as a surrender by implication. But no such lease has been proved, nor can it be inferred, from the records of the town, that any lease was ever given to the person under whom the defendant claims, or to any one of the tenants. It is true that the town, from time to time, chose committees to lease the lands and to collect the rents ; but whether any leases were given does not appear. But if the tenants had received leases from the town, while the title was in dispute, this would not operate as a surrender of the former lease, without the consent of the feoffees. And all such liabilities to pay rents to the town, if any there were, would cease, when the plaintiffs' title was established by the statute of 1765.

The only remaining question is, whether, by the facts agreed, the plaintiffs have a title to the rent demanded under the lease to John Cogswell. The defendant's counsel contend that nothing is due, because it is provided in the lease that John Cogswell should have the right to deduct from the yearly rents any such town taxes as may be assessed on the lands leased ; and therefore, if the defendant is liable for rent, he is entitled to the benefit of the deduction of the town taxes assessed on the land held by him under the lease. The plaintiffs' counsel contend that this privilege of deduction did not extend to his assigns, and that he had no right to deduct from the yearly rent any tax on the land, except such as might be assessed by the town of Ipswich. However this may be, we think the defendant is bound to pay his portion of the rent, without any deduc-

tion for taxes ; because he has not traced his title so as to show himself entitled to any such deduction.  And there are strong reasons to presume that this right of deducting taxes has been relinquished by the tenants.  In the year 1710, there was an express relinquishment of this right, as follows :   " We, whose names are subscribed, the tenants upon the lands granted for support of the free school in Ipswich, and thereupon were freed from town rates, and being now entered to have rights in the three fifths of the dividable lands, with others now admitted, provided we will oblige ourselves respectively, and our respec tive heirs and successors, to pay all town rates proportionably as other inhabitants are by law obliged, which thing we hereby oblige ourselves, heirs and successors, for the future, to attend and discharge."   This agreement is signed by John Cogswell, for himself and his two sons, (to whom he had given lands,) by Gifford Cogswell and four other tenants.   It cannot be presumed that any of these tenants would afterwards convey any part of their lands, with the privilege of deducting the taxes of the grantee ; and the only deed produced by the defendant has a clause obligating him to pay a yearly rent, without mentioning any right of deduction for taxes, contrary to the terms of their agreement.   If the defendant would maintain his right to deduct his taxes from his yearly rent, he must prove that he derives his title from some one of the tenants, who had not relinquished this right.   This he has failed to show.   On the contrary, the only title deed produced by him has a clause obligating him to pay a yearly rent, without mentioning any right to deduct his taxes.   And he has paid his rent to the plaintiffs up to the year 1838 ; and for many years before that time, he was the plaintiffs' agent, to collect and pay over the rents due from the other tenants of the premises.   We are of opinion, therefore, if the tenant derives his title from John Cogswell, he is liable on his covenant in the lease.   A covenant to pay rent, runs with the land, and where the land is assigned in severa portions, the rent is to be apportioned.

It does not appear, by the statement of facts, whether the defendant does derive his title from John Cogswell, the original

lessee, or not; but in the argument, the affirmative was assumed by the counsel for both parties. This question, however, is not material; for if the defendant does not hold under a title derived from the original lessee, the plaintiffs are entitled to recover on the count for use and occupation. By the payment of rent previously to 1838, and up to that time, the relation of landlord and tenant was admitted, and the defendant continued responsible for rent, not having given notice that he intended to hold under another title.

*Judgment for the plaintiffs.*